1
2
3
4
5
6

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

7
8
9  EDWARD E.  SEELY,                    )        3:08-cv-00125-RCJ (RAM)
                                        )
10           Plaintiff,                 )        **REPORT AND RECOMMENDATION**
                                        )        **OF U.S. MAGISTRATE JUDGE**
11     vs.                              )
                                        )
12  JIM GIBBONS, et al.,                )
                                        )
13           Defendants.                )
   _____    )

14
15        This Report and Recommendation is made to the Honorable Robert C. Jones, United

16  States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

17  to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the court is

18  Defendants' Motion for Summary Judgment. (Doc. #222.)[1] Plaintiff has opposed (Doc. #248),

    and Defendants have replied (Doc. # 249).  Also before the court is Defendants' motion to
19
    submit Plaintiff's medical records *in camera*. (Doc. # 221.) Plaintiff has opposed (Doc. # 229)
20
    and Defendants replied (Doc. # 249).  After a thorough review, the court recommends that
21
    Defendants' motion for leave for *in camera* submission of documents in support of their
22
    motion for summary judgment should be granted.  The court further recommends that
23
    Defendants' Motion for Summary Judgment should be granted, in part, and denied, in part.
24

25                          **I. BACKGROUND**

26        At all relevant times Plaintiff Edward E. Seely (Plaintiff) was an inmate in custody of

27  the Nevada Department of Corrections (NDOC) at Northern Nevada Correctional Center

28        _____
                [1]        Refers to the court's docket number.

(NNCC).  (Pl.'s 2d Am. Compl. (Doc. # 11) 1, Defs.' Mot. for Summ. J. (Doc. # 222) 1.)

Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983.  (*Id.*)  The remaining

Defendants are Robert Bannister, M.D., John Peery, and Tony Corda.  (*See* Doc. # 11, Doc. #

158 2, Doc. # 221 1.)   Plaintiff seeks compensatory and exemplary damages as well as

injunctive relief.  (Doc. # 11 52.)[2]

Plaintiff is a high-level T-5 paraplegic confined to a wheelchair. (Doc. # 11 at 8-11.) The

only remaining counts are Counts 1-3.  (Doc. # 133 and Doc. # 158.)[3]   The remaining

allegations center around the shower facilities in Unit 3, the building where Plaintiff was

housed at NNCC. (*See* Doc. # 158.) Plaintiff alleges that although Unit 3 was renovated in

spring 2007 to comply with the Americans with Disabilities Act (ADA), the facilities, as

renovated, were not accessible.  (Doc. # 11 at 8-9.)  Plaintiff alleges that the shower stalls are

too narrow and lack wall-mounted stationary seating, which forces him to take showers in his

wheelchair.  (*Id.* at 8-12.)  It is undisputed that Unit 3 had the wall-mounted benches prior to

the renovations, and that the benches were not installed with the renovations.  (Doc. # 221

2-3, Doc. # 248 7.)   Plaintiff also alleges that the portable shower stools provided as an

accommodation are inadequate because they lack sufficient strength to withstand a user's

transfer to or from a wheelchair, and are not accessible within proximity of the shower stalls.

(*Id.* at 8-12.)  As of the date he filed his complaint, Plaintiff claimed that he still had not been

provided the proper equipment to access the showers, such as a shower chair with suction cup

legs or wall-mounted stationary chair.  (*Id.* at 8-14.)  In addition, Plaintiff alleges that the

shower conditions allegedly expose him to infectious disease that can be contracted by bodily

fluids or blood.  (*Id.* at 8-16.)

---

[2]     Refers to page numbers on the court's docket and not Plaintiff's page numbers.

[3]     The court dismissed Counts 4-9 with prejudice.  The court also dismissed Plaintiff's claims relating to Unit 3 toilet and sink facilities, NNCC main dining hall, Unit 8/Regional Medical Facility, and Unit 10, without prejudice.  (Doc. # 133 and Doc. # 158.)

1   Based on these allegations, Plaintiff alleges deliberate indifference to his serious

2   medical needs in violation of the Eighth Amendment and denial of equal protection under the

3   Fourteenth Amendment arising from violations of the ADA and Rehabilitation Act (RA).

4   **II.  MOTION FOR LEAVE TO SUBMIT DOCUMENTS *IN CAMERA***

5   Defendants filed a motion for leave for *in camera* submission of Plaintiff's medical

6   records in support of their motion for summary judgment. (Doc. # 221.) Plaintiff opposes the

7   motion on the grounds that the medical records were allegedly improperly disclosed to third

8   parties affiliated with NDOC and the Nevada Attorney General's Office.  (Doc. # 248 13-14.)

9   Defendants are correct that because Plaintiff's complaint alleges an Eighth Amendment

10  violation premised on Defendants' deliberate indifference to Plaintiff's serious medical needs,

11  his medical records are directly relevant to this action and the court's determination of the

12  motion for summary judgment. *See Seaton v.  Mayberg*, 610 F.3d 530, 537 (9th Cir.  2010)

13  (clarifying that the Supreme Court has not established a constitutional right to privacy in

14  medical records); *see also Thomas v.  Carrasco*, 2010 WL 4024930 at * 3-4 (determining, in

15  line with several other district courts, that the right of privacy of medical records is waived

16  when the plaintiff's medical condition is "at issue").

17  Moreover, pursuant to Administrative Regulation (AR) 639, Plaintiff need only make

18  a request to review his own records.  Finally, if Plaintiff did not want the Attorney General's

19  Office and its client, NDOC, to review his medical records, he could have made the decision

20  not to raise a claim putting his medical records at issue.  Therefore, Defendants' motion for

21  leave for *in camera* submission of medical records in support of their motion for summary

22  judgment should be granted.

23  **III.  MOTION FOR SUMMARY JUDGMENT**

24  **A.   LEGAL STANDARD**

25  The purpose of summary judgment is to avoid unnecessary trials when there is no

26  dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

27  18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted).  All reasonable inferences are drawn in

28

favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

4

1
2
3
4
5
6

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

7
8
9
10
11
12
13
14
15
16
17
18

    If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

19
20
21
22
23
24

    At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

25   / / /

26   / / /

27   / / /

28

**B.    DISCUSSION**

     **1.    EIGHTH AMENDMENT**

         **a.    Deliberate Indifference to Conditions of Confinement**

Defendants argue that: (1) Plaintiff has not been deprived of a basic human need; (2) Plaintiff was not exposed to an unreasonable risk of harm to his health; (3) Defendants did not have the necessary culpable state of mind to constitute deliberate indifference; and (4) Defendants made reasonable attempts to respond to Plaintiff's alleged risk of harm. (Doc. # 222 7-10.)

         **i. Standard**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

In challenging prison conditions, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(citing *Farmer,* 511 U.S. at 835).  The deliberate indifference standard consists of an objective and subjective component. *Farmer*, 511 U.S. at 843.  First, "the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citations and quotations omitted).  When a plaintiff asserts deliberate indifference to conditions of confinement, the act or omission of a prison official must "result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and quotations omitted).  Second, a prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837.  "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128.  Prison officials may avoid liability by:

(1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

### ii. Analysis

As to the objective component, Defendants argue that Plaintiff has not been deprived of a basic human need. (Doc. # 222 7.) Plaintiff asserts that as a result of his conditions of confinement, he was forced to shower in his wheelchair for approximately one year in unsafe and unsanitary conditions. (Doc. # 248 20.) Plaintiff's claims are corroborated by several inmates at NNCC. (*See* Doc. # 248 64-69.)

Defendants do not dispute the following: Plaintiff is a paraplegic (Doc. # 222 2:20); he was housed in Unit 3 of NNCC from March 2005 until March 2008 (*Id.* at 2:23-24); between February and March 2007, changes were made to the shower facilities in Unit 3 (*Id.* at 2:25-26); prior to these renovations, the showers had wall-mounted shower benches for disabled inmates to sit on while showering (*Id.* at 2:27-28); upon completion of the renovations to Unit 3, the shower facilities no longer had wall-mounted shower benches (*Id.* at 3:1-2); due to the lack of benches, shower stools were provided for use in showers in Unit 3 (*Id.* at 3:3-4); Plaintiff filed a grievance about the shower facilities in Unit 3 (*Id.* at 3:5-7); Plaintiff claims he was denied proper shower facilities from March 2007 to March 2008 (*Id.* at 3:15-16); in October 2008, Defendants purchased a special shower chair for use in Unit 3 (*Id.* at 3: 17-18, Ex. D, Ex. E); Plaintiff claims he never received the shower chair (*Id.* at 19-20).

Due to Plaintiff's balance issues, the shower stools were essentially useless to him. (Doc. # 11 8-12.) According to Plaintiff, the portable shower stools provided as an accommodation are inadequate because they lack sufficient strength to withstand a user's transfer to or from a wheelchair, and are not accessible within proximity of the shower stalls. (*Id.* at 8-12.) Defendants do not appear to dispute that Plaintiff was forced to shower in his wheelchair every day for approximately one year. Defendants contend however, that because Plaintiff had access to the shower facilities every day, the fact that he had to shower in his wheelchair every day is not a denial of life's basic necessities. Because Plaintiff claims that

7

1   showering in his wheelchair every day was unsanitary and posed a risk to his safety and

2   resulted in bed sores (Doc. # 248 70-73), the court finds that he has raised a genuine issue of

3   material fact. If Plaintiff's version of events were believed, a reasonable jury could conclude

4   that having to shower in a wheelchair every day for approximately one year, in unsanitary and

5   unsafe conditions, is a denial of one of life's basic needs.

6       As to the subjective component, Defendants argue: (1) Plaintiff was not exposed to an

7   unreasonable risk of harm; (2) Defendants did not have the requisite culpable state of mind;

8   and (3) they made reasonable attempts to respond to the alleged risk of harm. (Doc. # 222 7-

9   10.)

10      Defendants' claim that Plaintiff was not exposed to an unreasonable risk of harm is

11  belied by the evidence. Defendant Peery provided a declaration in support of Defendants'

12  motion. (Doc. # 222 Ex. D.) Peery acknowledges that after the renovations were completed

13  in or around March 2007, the shower facilities in Unit 3 did not have wall-mounted shower

14  benches. (*Id.* at ¶ 4.) Peery confirms that shower stools were provided but acknowledges that

15  they can be difficult to transfer to from a wheelchair because they are not mounted to either

16  the wall or the floor. (*Id.* at ¶¶ 5-8.) Peery also acknowledges a meeting with Scott Youngs,

17  Project Coordinator for ADA Nevada, in August 2007 wherein Mr. Youngs visited the Unit 3

18  shower facilities. (*Id.* at ¶ 10.) While Peery specifically mentions Mr. Youngs's October 2,

19  2007 recommendation that NDOC purchase a roll-in shower chair for Plaintiff, he fails to

20  mention Mr. Young's August 9, 2007 recommendation that NDOC install the wall-mounted

21  shower benches. (*See* Doc. # 222 Ex. D and Ex. G.) Mr. Young's August 9, 2007 letter to Mr.

22  Peery reiterates Plaintiff's claim that he has been showering in his wheelchair that he uses

23  everyday. (Doc. # 222 Ex. G.) Peery acknowledges Plaintiff's claim that he did not receive the

24  shower chair. (*Id.* at Ex. D ¶ 13.)

25      On August 9, 2007, after touring the shower facilities in Unit 3 at Plaintiff's request and

26  by invitation of NDOC, Mr. Young sent a letter to Defendant Peery stating that discussions

27  were had regarding compliance with the ADA and RA § 504 standards and "it was agreed that

28                                                    8

the fixed, fold down seat should have been included in the remodel." (Doc. # 222 Ex. G.) Mr. Young recommended that wall-mounted shower benches be installed in Unit 3 because the ADA requires them, and states that it s part of NDOC's responsibility "to provide equal access to their programs and services." (*Id.*) Finally, Mr. Young notes that "there may be a significant risk to the health and safety of inmate Seely if he is required to use the shower chair provided by the administration." (*Id.*)

In an August 16, 2007 letter to Mr. Youngs, Defendant Peery acknowledges disappointment that the shower facilities in Unit 3 do not contain wall-mounted shower benches and indicates plans to install such a seat in at least one Unit 3 bath as soon as possible to give Plaintiff some relief to the problem of an "available acceptable shower seat." (*Id.*) For some undisclosed reason, Mr. Youngs provides a "revised letter of recommendation" to Peery on October 2, 2007, indicating that because of the cost and construction difficulties of installing wall-mounted shower benches, he is now recommending a roll-in shower chair be provided to accommodate Plaintiff and that it be provided to Plaintiff "as soon as reasonably possible." *(Id.*) Again, Defendants acknowledge Plaintiff's claim that he never received a roll-in shower chair. (Doc. # 222 3:19-20.) The court finds there is sufficient evidence to create a triable issue of material fact regarding whether Plaintiff was exposed to an unreasonable risk of harm.

The evidence demonstrates that Defendants knew of the condition of the shower facilities in Unit 3. Peery admits that he learned that wall-mounted shower benches were not included in the Unit 3 shower facilities after the completion of the renovations in or around March 2007. (Doc. # 222 Ex. D at ¶ 5.) Peery also admits that while shower stools were provided, it is difficult to transfer from a wheelchair to a shower stool because the stools are not fixed to the wall or the floor. (*Id.* at ¶ 6.) Plaintiff's grievance certainly put Defendants Corda and Bannister on notice of the condition. (*See* Doc. # 222 3:5-7, Ex. F.) With respect to Defendant Corda, he has not demonstrated that he lacked authority to investigate or respond to Plaintiff's complaints, distinguishing this from the situation where a grievance

9

responder named in a section 1983 lawsuit is dismissed for having purely administrative responsibilities relating to processing and referring grievances but was lacking any investigative authority. *See, e.g., Manney v. Monroe*, 151 F.Supp.3d 976, 986 (N.D. Ill. 2001). Moreover, on August 16, 2007, Defendant Peery copies Defendant Bannister on his response to Mr. Young's August 9, 2007 letter. (*Id.* at Ex. G.) Finally, Defendant Bannister and Defendant Peery took part in a tour of the shower facilities with Mr. Youngs in August 2007 and were aware of the conditions of the shower facilities. (Doc. # 222 Ex. A 32-33, Ex. G.)

The evidence demonstrates an issue of material fact as to whether Defendants' attempts to respond to the alleged risk of harm were reasonable. While Defendants claim that they responded reasonably to Plaintiff's alleged risk of harm, a reasonable jury presented with the evidence before the court could conclude the efforts to respond to the alleged risk of harm were insufficient and unreasonable. It is undisputed that Plaintiff claims he had to shower in his wheelchair for approximately a year, from March 2007 until March 2008. Defendants admit that Plaintiff is a paraplegic. (Doc. # 222 2.) Defendants admit that after the renovations were completed in approximately March 2007, the shower facilities in Unit 3 no longer contained wall-mounted shower benches. (*Id.* at 2-3.) Defendants provided shower stools, but essentially admit their futility by acknowledging it would be difficult to transfer from a wheelchair to a stool. (*Id.* 3, Ex. D at ¶¶ 5-6.) Defendants do not dispute that on August 5, 2007, Mr. Youngs came to NNCC to tour the shower facilities in Unit 3. (Doc. # 222 Ex. A 32-33, Ex. D at ¶ 10.) After this visit, on August 9, 2007, Mr. Youngs sent a letter to Defendant Peery recommending that wall-mounted shower benches be installed in Unit 3, noting that if Plaintiff is required to use a shower chair, he may be subject to a significant risk to his health and safety. (Doc. # 222 Ex. G.) Defendants initially responded to Mr. Youngs on August 16, 2007 that they agreed with the recommendation and would install a wall-mounted shower bench in at least one of the showers in Unit 3. (*Id.*) However, this was not done, and instead, in October 2, 2007, Mr. Youngs sent a revised recommendation to provide Plaintiff with a roll-in shower chair, but did not indicate how this would alleviate the

1   significant risk to Plaintiff's health and safety that he acknowledged in his August 9, 2007

2   letter. (*Id*.) Defendants contend that a shower chair was purchased, but recognize Plaintiff's

3   claim that he never received it. (*Id*. at 3.) This evidence demonstrates a dispute of fact as to

4   whether Defendants responded reasonably. Accordingly, summary judgment should be

5   denied as to Plaintiff's claim that Defendants were deliberately indifferent to his conditions

6   of confinement.

7                    **b. Serious Medical Needs**

8         Defendants argue that while Plaintiff alleges the lack of wall-mounted shower benches

9   denied him the opportunity to properly clean himself and could have resulted in harm, he has

10  not provided any medical records stating that his showering habits negatively affected his

11  health. (Doc. # 222 11.) Moreover, Defendants contend that Plaintiff admits that his

12  underlying medical condition has not worsened after showering in his wheelchair from March

13  2007 to March 2008. (*Id*.) Defendants assert that Plaintiff cannot show he was exposed to

14  an unreasonable risk to his health, and that any claims that he suffered bed sores as a result

15  of his inability to properly shower, are not supported by medical evidence. (*Id*.) Finally,

16  Defendants argue that they did not know of and disregard any possible harm to Plaintiff

17  because they provided all inmates with shower stools and purchased a special shower chair

18  for Plaintiff, met with an ADA advisor and acted promptly with his recommendations. (*Id*.)

19        Plaintiff claims that Defendants have been deliberately indifferent to his serious

20  medical needs as to his paraplegia and asserts that he contracted bed sores as a result of

21  having to shower in his wheelchair. (Doc. # 248 24, Doc. # 222 Ex. A at 50-52.)

22                         **ii. Standard**

23        A prisoner can establish an Eighth Amendment violation arising from deficient medical

24  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

25  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Supreme Court determined that

26  deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and

27  wanton infliction of pain" proscribed by the Eighth Amendment. "This is true whether the

28                              11

1    indifference is manifested by prison doctors in their response to the prisoner's needs or by

2    prison guards in intentionally denying or delaying access to medical care or intentionally

3    interfering with the treatment once proscribed." *Estelle*, 429 U.S. at 104-105.

4        A finding of deliberate indifference involves the examination of two elements: the

5    seriousness of the prisoner's medical need and the nature of the defendant's responses to that

6    need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds,*

7    *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A "serious" medical need

8    exists if the failure to treat a prisoner's conditions could lead to further injury or the

9    "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples

10   of conditions that are "serious" in nature include an injury that a reasonable doctor or patient

11   would find important and worthy of comment or treatment, a medical condition that

12   significantly affects an individual's daily activities, or the existence of chronic and substantial

13   pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.

14   2000).

15       If the medical needs are serious, the plaintiff must show that the defendant acted with

16   deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

17   high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). The plaintiff

18   must demonstrate that the prison medical staff knew of and disregarded an excessive risk to

19   his health. *Farmer*, 511 U.S. at 837. Deliberate indifference entails something more than

20   medical malpractice or even gross negligence. *Toguchi*, 390 F.3d at 1061. Inadvertence, by

21   itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.3d at 1060.

22   Instead, as stated above in the court's analysis concerning Plaintiff's failure to protect claim,

23   deliberate indifference is only present when a prison official "knows of and disregards an

24   excessive risk" to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th

25   Cir. 2003)(quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to

26   a prisoner's serious medical needs when they deny, delay, or intentionally interfere with

27   medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated

28

12

1   to the medical needs of the prisoner. *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.

2   1992); *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989)(citations omitted). Where

3   delay in receiving medical treatment is alleged, however, a prisoner must demonstrate that the

4   delay led to further injury. *McGuckin*, 974 F.2d at 1060.

5                                **ii. Analysis**

6          Plaintiff claims that Defendants have been deliberately indifferent to his serious

7   medical needs as to his paraplegia. (Doc. # 248 24.) Defendants are correct that Plaintiff's

8   paraplegia, an undeniably serious medical condition, is not the serious medical need Plaintiff

9   has asserted is the result of the denial of the ability to properly shower. Plaintiff has alleged

10  that the lack of wall-mounted shower benches caused him to have to shower in his wheelchair,

11  which he asserts was unsafe and unsanitary. When asked in his deposition, the only medical

12  result Plaintiff pointed to as a result of this condition was two to three bed sores in that year.

13  (Doc. # 222 Ex. A at 50-52.)

14         Assuming without deciding that contracting two to three bed sores over the period of

15  a year is a serious medical need, the court finds that there is no evidence that Defendants knew

16  of or disregarded this allegedly serious medical need. There is no evidence that Plaintiff

17  complained of his bed sores to Defendants and there is no reference to bed sores in Plaintiff's

18  medical records. (Doc. # 222 Ex. H (sealed).) Plaintiff admits that no doctor diagnosed that

19  he had bed sores as a result of the shower facilities in Unit 3. (*Id.* at 50.) Moreover, there is

20  no evidence of any denial or delay of treatment as to Plaintiff's underlying medical condition

21  related to his paraplegia. Accordingly, Defendants are entitled to summary judgment on

22  Plaintiff's claim that his Eighth Amendment rights were violated as a result of Defendants

23  deliberate indifference to a serious medical need.

24         **2.   FOURTEENTH AMENDMENT**

25              **a.  Failure to Respond to Grievances**

26         Defendants argue that Plaintiff's claim that Defendants failed to properly respond to

27  his grievance is without merit. (Doc. # 221 12-13.) While the court already dismissed

28                                    13

1  Plaintiff's claims in Counts 4-9 for failure to properly respond to grievances, to the extent

2  Plaintiff makes such a claim in Counts 1-3, summary judgment should be granted as to this

3  claim. An inmate does not have a right to a prison grievance procedure. *Olim v. Wakinekona*,

4  461 U.S. 238, 249 (1983); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)(citing

5  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Instead, the grievance process confers

6  a procedural right only. *Buckley*, 997 F.2d at 495. Without more, a prison official's failure to

7  adequately respond to an inmate's grievance is not actionable under § 1983. *Id*. The court

8  notes that this is different than the claim that Defendants had notice of Plaintiff's Eighth

9  Amendment conditions of confinement claim as a result of his grievance, and failed to perform

10  an investigation or respond to his the conditions of the shower facility, which is properly

11  addressed under the Eighth Amendment and not under a due process analysis. Because the

12  Eighth Amendment provides an "explicit textual source of constitutional protection" for

13  Plaintiff's claim, the Eighth Amendment and not the more generalized notions of due process

14  will be used to analyze Plaintiff's claim. *See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994),

15  Rehnquist, C.J., for plurality (citation omitted).

16  **b. Equal Protection**

17  Defendants argue that Plaintiff's equal protection claim fails because he is unable to

18  demonstrate Defendants acted with an intent or purpose to discriminate against him.

19  (Doc. #222 14.) Instead, Defendants assert that the lack of wall-mounted shower benches

20  impacted other inmates in Unit 3, and Plaintiff has offered no proof that no other inmate was

21  paralyzed in the same manner as Plaintiff thereby making his treatment unequal. (*Id*.)

22  Defendants also address Plaintiff's claim that he was denied equal protection based on

23  Defendants' denial of Plaintiff's grievances. (*Id*.) Defendants assert that Plaintiff's only

24  properly filed grievance was filed well after Defendants made attempts to address the lack of

25  wall-mounted shower benches. (*Id*.)

26  A viable equal protection claim requires that Plaintiff "show that the defendant acted

27  with an intent or purpose to discriminate against him based upon his membership in a

28

14

protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original)).

Where state action "does not implicate a fundamental right or a suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  Plaintiff has not alleged discrimination with respect to a fundamental right or suspect classification, and therefore must show that there is no rational basis for treating him differently from other similarly situated.

Here, Defendants produce evidence that once they were aware that the showers in Unit 3 did not have wall-mounted shower benches, they provided shower stools for the use of all inmates during the time period at issue-March 2007 to March 2008. (Doc. # 222 Ex. D at ¶¶ 5, 8.)  NDOC subsequently purchased a shower chair for Plaintiff's use, although Plaintiff claims he never received this chair.  (*Id.* at ¶¶ 11-13.)  While Plaintiff claims that he was treated from other similarly situated paraplegics, according to the evidence, similarly situated paraplegics were treated similarly.  The court also finds that there is no evidence of an equal protection violation based on Defendants' denial of Plaintiff's grievances.  Because Plaintiff has not demonstrated that he has been intentionally treated differently from others similarly situated, summary judgment should be granted as to Plaintiff's equal protection claim.

### 3.   ADA AND REHABILITATION VIOLATIONS

Defendants argue that to the extent any of Plaintiff's claims of ADA or Rehabilitation Act (RA) violations exist in Counts 1-3, they should be dismissed.  (Doc. # 222 at 15.)  Specifically, Defendants argue that to the extent Plaintiff asserts a violation of Title III of the ADA, that section only applies to a place of "public accommodation" and a jail is not such a

1  place.  (*Id*.) Defendants argue that Plaintiff's claims under Title II of the ADA and the RA fail

2  because Plaintiff cannot sue Defendants in their individual capacities under these acts, and

3  the official capacity claims against these Defendants for money damages have been dismissed

4  (*Id*. at 16.)

5      Plaintiff asserts a violation of Title II of the ADA  pursuant to ADA Accessibility

6  Guideline 4.21.3 and § 504 of the RA for failure to provide Plaintiff with the required wall-

7  mounted shower bench. (Doc. # 248 8.)

8      Title II of the ADA and § 504 of the RA, "both prohibit discrimination on the basis of

9  disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  The ADA applies only to

10  public entities.  *Id*.  The RA, in contrast, applies to all federally funded programs.  *Id*.  In

11  *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998), the United States Supreme

12  Court made clear that the ADA applies to state prisons.  Title II prohibits discrimination

13  against "qualified" people with disabilities. *See* 42 U.S.C. § 12131 (defining a "qualified person

14  with a disability" as a person who "meets the essential eligibility requirements for the receipt

15  of services").  If a public entity denies an otherwise qualified individual meaningful access to

16  its services, programs, or activities solely by reason of his or her disability, that person may

17  have an ADA claim against the public entity. *Weinreich v. Los Angeles County Metro. Transp.*

18  *Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  Likewise, under the RA, programs that receive federal

19  funding are prohibited from excluding an otherwise qualified individual "solely by reason of

20  his or her disability."  29 U.S.C. § 794.

21      Defendants admit that Plaintiff is a paraplegic.  (Doc. # 222 2.)  Defendants do not

22  dispute that Plaintiff is otherwise qualified or that he was excluded participation or denied the

23  benefits of a service, program or activity, but instead argue that Plaintiff cannot maintain an

24  action against Defendants for violation of the ADA and RA in their individual capacities

25  because all individual claims for damages have been dismissed.  (Doc. # 222 16.)  While

26  Defendants are correct that Plaintiff cannot maintain a claim under the ADA or RA against

27  Defendants in their individual capacities, *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.

28                                          16

1    2002), Plaintiff's claim for injunctive relief remains against Defendants in their official

2    capacities. (Doc. # 11 55.)  Because Defendants have not met their burden with respect to

3    Plaintiff's ADA/RA claim, summary judgment should be denied.

4             **4.    COUNT 1**

5             Defendants assert that while Count I of Plaintiff's Second Amended Complaint was not

6    dismissed, all of the Defendants named in Count I have been dismissed.  (Doc. # 221 16.)

7    While Defendants are not specifically named in Count 1, it clearly contains the allegations in

8    support of Plaintiff's claims that have been asserted against Defendants in his complaint.

9    Construing the complaint liberally, as the court must, these allegations are sufficiently tied to

10   Defendants, and summary judgment is not appropriate on this ground.

11            **5.    DAMAGES**

12            Defendants argue that Plaintiff is barred from recovery of compensatory or actual

13   damages pursuant to section 1997e(e) of the Prison Litigation Reform Act (PLRA) because a

14   prisoner's monetary recovery for mental and emotional injuries is restricted absent a showing

15   of physical injury. (Doc. # 222 17.)  Defendants argue that the only physical injury Plaintiff

16   claims are bed sores, but these claims are not supported by medical evidence.  (*Id*.)

17   Defendants also assert that Plaintiff did not suffer any property damage because the

18   wheelchair was not his personal property. (*Id*.) As a result, Defendants assert Plaintiff is only

19   entitled to nominal damages. (*Id*.)

20            While Defendants assert that Plaintiff did not suffer physical injury, Plaintiff testified

21   in deposition, under oath, that he suffered two or three bed sores during the relevant time

22   period as a result of not being able to shower properly. (Doc. # 222 Ex. A at 51:11-17, 23-25,

23   52:1-1.)  While Defendants contend this is not documented in any records, Plaintiff claims

24   under oath that he suffered this ailment Plaintiff claims he suffered these bed sores as a result

25   of having to shower in his wheelchair, and the court finds this is sufficient to support a finding

26   of physical injury for purposes of the PLRA.  If a jury were to believe Plaintiff's version of

27   events, Plaintiff could conceivably recover monetary damages.

28                                    17

1

## 6. QUALIFIED IMMUNITY

2   Defendants argue they are entitled to qualified immunity because Plaintiff cannot

3 establish Defendants violated any clearly established constitutional right.  (Doc. # 222 18.)

4 Even if Plaintiff could establish the violation of a constitutional right, Defendants argue that

5 a reasonable official would not have known this was a violation because they were attempting

6 to provide Plaintiff with relief regarding his complaints about the showers.  (*Id*. at 18-19.)

7   "[Q]ualified immunity protects government officials from liability for civil damages

8 insofar as their conduct does not violate clearly established statutory or constitutional rights

9 of which a reasonable person would have known."  *Pearson v.  Callahan*, 555 U.S. 223, 129

10 S.Ct.   808, 815 (2009) (citation and internal quotations omitted).    Under certain

11 circumstances, state officials are entitled to qualified immunity when sued in their personal

12 capacities.  *Carey v.  Nev.  Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir.  2002).  When a

13 state official reasonably believes his or her acts were lawful in light of clearly established law

14 and the information they possessed, the official may claim qualified immunity.  *Hunter v.*

15 *Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v.  Barclay*, 272 F.3d 1207, 1214 (9th Cir.

16 2001).  Where "the law did not put the officer on notice that his conduct would be clearly

17 unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v.  Katz*,

18 533 U.S. 194, 202 (2001), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223

19 (2009) (*"while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be

20 regarded as mandatory").

21   In analyzing whether a defendant is entitled to qualified immunity, the court must

22 consider two issues.  The court must determine whether the plaintiff alleges a deprivation of

23 a constitutional right, assuming the truth of his factual allegations, and whether the right at

24 issue was "clearly established" at the time of defendant's alleged misconduct.  *Clouthier v.*

25 *County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct.

26 808, 816 (2009)).  "Whether a right is clearly established turns on the 'objective legal

27 reasonableness of the action, assessed in light of the legal rules that were clearly established

28

18

at the time it was taken.'" *Id.* (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 822).

The court finds that an Eighth Amendment claim for deliberate indifference to Plaintiff's conditions of confinement is presented under the facts alleged by Plaintiff. Moreover, the court finds that it would be clear to a reasonable NDOC employee knowing of the conditions of the shower facilities that denial or delay of a reasonable response to these alleviate these conditions could pose a serious risk to Plaintiff's health so as to be unconstitutional. The general law regarding Eighth Amendment conditions of confinement claims was clearly established at the time period in question in this case. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998).

Upon resolution of factual issues, prison officials may be relieved of any liability in this case. However, if Plaintiff's version of the facts were to prevail at trial, a jury may conclude that the prison officials were deliberately indifferent to Plaintiff's serious risk of harm. Under such circumstances, the prison officials' actions are not protected by qualified immunity. Thus, summary judgment is inappropriate on this ground.

## III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' motion to submit Plaintiff's medical records *in camera* (Doc. # 221).

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an Order **GRANTING**, in part, and **DENYING**, in part, Defendants' Motion for Summary Judgment (Doc. #222) as follows:

• Summary Judgment should be denied as to Plaintiff's Eighth Amendment conditions of confinement claim;

• Summary Judgment should be granted as to Plaintiff's Eighth Amendment serious medical needs claim;

• Summary Judgment should be granted as to Plaintiff's claim of a due process violation under the Fourteenth Amendment related to the failure to respond to

19

grievances;

- • Summary Judgement should be granted as to Plaintiff's equal protection claim;

- • Summary Judgment should be denied as to Plaintiff's claim under the ADA/RA;

- • Summary Judgment should be denied as to Count 1.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 2, 2011.

_____
UNITED STATES MAGISTRATE JUDGE